UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. GOGOE

                     Plaintiff,

      v.                                Case No. 14-12502
                                     HON. TERRENCE G. BERG

WELLS FARGO BANK N.A.,

                     Defendant.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS (DKT. 19)**

       Plaintiff Thomas A. Gogoe brings this lawsuit seeking to undo mortgage contracts he signed with Defendant Wells Fargo Bank on the ground that the bank has allegedly breached these contracts and committed fraud. Plaintiff filed suit against Defendant in Oakland County Circuit Court on April 18, 2014. (Dkt. 2, p. 5.) The allegations in the Complaint consist of three claims, two breach of contract claims and one fraud claim, each of which arise out of a pair of mortgage agreements and a loan modification agreement between Plaintiff and Defendant. Defendant removed the case to this Court on June 25, 2014. (Dkt. 1.)

       Defendant now moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 19.) Defendant had filed an earlier motion to dismiss on August 1, 2014, but that motion was terminated on September 23, 2014 when this case was sent into facilitation. (Dkt. 13.) The case did not settle. Defendant argues, and Plaintiff does not challenge, that Plaintiff is current on his mortgage and is able to continue paying. (Dkt. 19.) Although Plaintiff is not in default, he contends that

Defendant has applied his payments in a manner inconsistent with the terms of the mortgages, and that he was misled as to the nature of the mortgages before he signed them. (*Id.*) The motion was fully briefed as of June 15, 2015. (*See* Dkt. 25.) After careful review and consideration of the parties' briefs, the Court finds that oral argument would not significantly aid the Court's decision. Accordingly, the motion before the Court will be decided without a hearing.  *See* E.D. Mich. LR 7.1(f)(2). For the reasons explained below, the Court will **GRANT** Defendant's motion to dismiss.

## I.    FACTUAL BACKGROUND

Plaintiff is the fee simple owner of the property located at 201 Osprey St. Walled Lake, Michigan ("the property"). Plaintiff bought this lakefront property for no money down in 2006 in a transaction that involved two loans: one, a 30-year mortgage which required a very onerous adjustable interest rate that favored the Defendant bank, and a second loan to fully finance the down payment, which required a gigantic balloon payment after fifteen years.  (Dkt. 24, p. 3.) On July 21, 2006, Plaintiff entered into an adjustable rate mortgage ("the First Mortgage") consisting of a promissory note ("the First Note") and a mortgage agreement ("the First Mortgage Agreement") with Defendant. (*Id.*) The First Mortgage Agreement secured the First Note with the property. (*Id.*) Under the terms of the First Mortgage, Plaintiff promised to pay Defendant $524,000 plus interest and to pay this debt in full by August 1, 2036.[1] (Dkt. 19, Ex. 2 at p. 3.)

---

[1] As indicated in the Truth in Lending disclosure statement that accompanies the First Mortgage, Plaintiff was loaned $524,000 at an annual percentage rate of 7.4840%. (Dkt. 19, Ex. 3 at p. 2.) In

On the same day, Plaintiff also entered into a second mortgage ("the Second Mortgage") consisting of a promissory note ("the Second Note") and a mortgage agreement ("the Second Mortgage Agreement") with Defendant in order to make the down payment of $131,000 needed to obtain The First Mortgage. (Dkt 19, Exs. 4-5.) As a result of this highly leveraged deal, Plaintiff's purchase of the property was 100% financed and Plaintiff had no equity in the property. Seeking to change the terms of The First Mortgage, Plaintiff entered into a loan modification agreement ("the Loan Modification Agreement") with Defendant on June 28, 2010. (Dkt. 19, Ex. 6.)

## A. The First Mortgage

Defendant lent Plaintiff $524,000 in the First Mortgage. (Dkt. 19, Ex. 3 at pp. 2-3.) Under the terms of the First Mortgage, consisting of the First Mortgage Agreement and the First Note, Plaintiff is to repay the $524,000 over 30 years. (*Id.* at p. 3.) The contracts provide that between September 1, 2006 and September 1, 2016, Plaintiff is to make monthly payments of $3,165.83. (Dkt. 19, Ex. 1 at p. 2.) This first decade of payments, as stated in the agreements, are "only for the interest due on the unpaid principal," which means that they only cover the accrued interest on the loan and do not reduce the principal amount.[2] (*Id.*) During this ten-year,

---

addition to the amount financed, Plaintiff would owe $907,805.31 in finance charges for a total debt of $1,431,805.31 due in full by August 1, 2036. (*Id.*)

[2] The fact that the first ten years of payments are interest only is made clear throughout the First Mortgage and the First Note. The First Note states that the initial monthly payments "will be only for the interest due on the unpaid principal of this Note." (Dkt. 19, Ex. 1 at p. 2.) The First Mortgage's Adjustable Rate Rider notes that the payments will be "for interest only" until September 1, 2016. (Dkt. 19, Ex. 2 at p. 20.) Finally, the Truth in Lending Disclosure Statement that

interest-only period, there is an interest rate of 7.25% on the loan. (*Id.*) After this interest-only period, Plaintiff's monthly payments increase to $4,382.95, for an additional 20 years. (Dkt. 19, Ex. 1 at p. 2, Ex. 3 at p. 2.) These payments are directed toward both accrued interest and the principal debt.  The final payment is to be made on August 1, 2036 for the remainder of the principal. (Dkt. 19, Ex. 2 at p. 3.)

Because there is no prepayment penalty on the loan, Plaintiff can freely refinance or make advance payments on the principal to reduce the overall cost of the loan. (Dkt. 19, Ex. 1 at p. 3.) At the end of the interest-only period, Defendant can change Plaintiff's interest rate annually according to a formula outlined in the First Mortgage Note and the First Mortgage Agreement. (Dkt. 19, Ex. 2 at p. 20.) The calculation of the new interest rate is not related to the interest rate that Plaintiff paid during the interest only period. (*See id.*)

Plaintiff alleges that the First Note is internally inconsistent because it states that "Plaintiff will make payments every month until he has paid all of the principal that he owed under this note." (Dkt. 24, p. 6.) He also points to language stating that loan payment can be increased by 7.5% of the "then existing principal and interest payment," and that borrower "will pay [p]rincipal and interest by making payments." (*Id.* at 7.) Plaintiff further alleges that the payment schedule outlined in the Truth in Lending Disclosure Form for the First Mortgage ("the First TILDS") is inconsistent with the interest rate listed in the promissory note for the

---

summarizes the terms of the First Mortgage shows that the first ten years of payments are interest only. (Dkt. 19, Ex. 3 at p. 2.)

First Mortgage. (*Id.* at 8.) In short, Plaintiff takes the position that the First Mortgage requires that Defendant apply Plaintiff's monthly payments during the interest-only period toward reducing the principal balance on the First Mortgage Note, rather than simply paying off accrued interest.

## C. The Second Mortgage

In the Second Mortgage, Defendant lends Plaintiff $130,815. (Dkt. 2, Ex. E at p. 1.) Plaintiff is required to make monthly payments of $999.40 from September 4, 2006 until August 4, 2021. (Dkt. 19, Ex. 4 at pp. 3-4.) On August 4, 2021, Plaintiff is to make a final "balloon payment" of $103,216.34. (*Id.*) This loan has a fixed interest rate of 8.375%. (*Id.* at p. 3.) The loan is partially amortizing, which means that the monthly payments leading up to the balloon payment pay off the accrued interest and reduce the principal amount. (*Id.*) Unlike the First Mortgage, the Second Mortgage has a prepayment penalty of $500 that Plaintiff has to pay if he prepays the note in full at any time within the first three years (i.e. through 2009). (*Id.* at 4.)

## D. The Loan Modification Agreement

On June 28, 2010, Plaintiff and Defendant entered into the Loan Modification Agreement. (Dkt. 19, Ex. 6.) The Loan Modification Agreement modifies the interest-only period (i.e. the first 10 years) of the First Mortgage.[3] (*Id.* at p. 2.) The Loan Modification Agreement increases the principal from $524,000 to $530,027.49. (*Id.*) However, Plaintiff does not pay any interest on the additional

---

[3] The Loan Modification Agreement "amends and supplements (1) the Mortgage, Deed or Trust or Security Deed (the "Security Instrument") dated July 21, 2006 and (2) the adjustable rate/fixed rate note (the "Note"), bearing the same date as, and secured by, the Security instrument […]" (Dkt. 19, Ex. 6 at p. 2.)

5

$6,027.49 and does not make monthly payments on it.[4] (*Id.*) Instead, Plaintiff must pay the $6,027.49 when he sells or transfers an interest in the property or when the loan matures. (*Id.* at pp. 2-3.) Moreover, if Plaintiff prepays some of the principal ahead of schedule, then Defendant can apply that prepayment to the interest-free $6,027.49 before applying it to the interest bearing part of the principal. (*Id.* at 3.)

In return for the interest-free increase in principal, Plaintiff receives a lower interest rate and correspondingly lower monthly payments for five of the six remaining years in the interest-only period of the First Mortgage. (*Id.*) Between August 1, 2010 and July 1, 2014, Plaintiff will pay an interest rate of 5.375% (down from 7.25%), and his monthly payments will be $2,347.08 (down from $3,165.83). (*Id.* at p. 2.) Beginning on July 1, 2014 and continuing until July 1, 2015 (with the first payment being made on August 1, 2014), Plaintiff's interest rate increased to 6.375% (still down from 7.25%), and his monthly payment became $2,783.75 (still down from $3,165.83). (*Id.*) Starting on July 1, 2015, Plaintiff's interest rate and payments returned to what they were originally in the First Mortgage before the Loan Modification Agreement. (*Id.*) No other changes were made to Plaintiff's mortgages in the Loan Modification Agreement.

In addition to the actual loan modification agreement, there is also a loan modification agreement letter ("the letter"). (Dkt. 2, Ex. J at pp. 69-71.) This document is dated June 24, 2010 and explains what Plaintiff's payments and interest rate would be on the First Mortgage if he signed the Loan Modification

---

[4] The Loan Modification Agreement states that the new principle balance is $530,027.49 but that $6,027.49 of this new balance, or the secondary principal balance, will be deferred and Plaintiff will not pay interest or make monthly payments on that amount. (Dkt. 19, Ex. 6 at p. 2.)

Agreement. (*Id.*) Specifically, the letter states that his monthly payment would be $2,347.08 and that this payment would be an "interest only payment." (*Id.*) It also states that there is no "principal and interest payment" and that "the payment reflected in the Loan Modification Agreement is strictly the Principal and Interest or the Interest only amount." (*Id.*) It also states that $6,027.49 will be added to the "principal and interest and escrow" in "[Plaintiff's] second mortgage loan." (*Id.*) The document makes clear that these numbers are not necessarily final, noting that "the amounts set forth in this letter […] may be subject to change." (*Id.*)

## II.    LEGAL STANDARD

Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's Complaint fails to identify any provision of any contract that Defendant has breached and that Plaintiff has failed to plead his fraud claims with the requisite specificity. (Dkt. 19, p. 8.) Rule 12(b)(6) provides for a motion to dismiss based on failure to state a claim upon which relief can be granted.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a case of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 555). A claim is thus facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556).

When assessing whether a Plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A Plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, the Court primarily considers the allegations in the complaint; although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *see also Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed part of the pleadings). Where "the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing *Weiner v.*

8

*Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner*, 108 F.3d at 89.

Here Plaintiff's factual allegations fail to state a plausible claim. None of the facts alleged by Plaintiff are sufficient to allow the court to infer that Defendant has breached the First Mortgage, the Second Mortgage, or the Loan Modification Agreement. Nor does the Complaint identify with specificity any conduct or statements by Defendant that may plausibly be considered misrepresentations or fraud, as is required by Federal Rule of Civil Procedure 9(b).  Moreover, any claims that Defendant may have made oral promises to Plaintiff are barred by statute under Michigan law. MCL § 566.132. For all of the reasons set out in detail below, Defendant's to dismiss motion will therefore be granted.

## III.   ANALYSIS

### A. Plaintiff Cannot Sue for Breach of Any Oral Promise

In the first instance, although Plaintiff denies in his response brief that he is suing for breach of an oral promise (Dkt. 24, p. 21), the lack of clarity in Plaintiff's Complaint compels the Court to address the possibility that Defendant breached an oral agreement with Plaintiff. (*See e.g.*, Dkt. 2, p. 11.) Any oral promise that Defendant may have made to Plaintiff is unenforceable by law, however. Pursuant to MCL 566.132(2):

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

    (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

    (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

    (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

This statute precludes any claim to enforce a financial institution's alleged promise relating to a loan or some other financial commitment where there is no signed writing. *See Crown Technology Park v. D & N Bank,* FSB, 242 Mich. App. 538, 549-51 (2000).

Although the claims in the Complaint speak in terms of breaches of written contracts, the allegations also include references to breaches of oral agreements. Among them are Plaintiff's claims that Defendant made and breached oral agreements not to add fees to the principal and to adjust the amortization schedule during in the Loan Modification Agreement. (Dkt. 2, ¶¶ 65-66.) Whether or not these oral agreements existed, MCL 566.132(2) renders them unenforceable. Similarly, any oral promise made by Defendant to the effect that the monthly payments during the interest-only period of the First Mortgage would be sufficient to pay both the principal and interest owed on the loan would also be unenforceable. (Dkt. 2, p. 8-9.)

To survive, any breach of contract claim that Plaintiff has must be based on the written terms of the First Mortgage, the Second Mortgage, or the Loan Modification Agreement. The Court will therefore examine Plaintiff's allegations

concerning the Loan Modification Agreement, the First Mortgage as modified by the Loan Modification Agreement, and the Second Mortgage to determine whether Plaintiff has plead sufficient facts to plausibly establish that Defendant breached any of these contracts.

**B. Count I: Breach of the Loan Modification Agreement**

Plaintiff claims that the Loan Modification Agreement is not only ambiguous, but internally inconsistent, and therefore Defendant necessarily breached it. (Dkt. 24, p. 12.) The proper interpretation of a contract is a question of law. *See Wilkie v. Auto-Owners Ins. Co.* 469 Mich. 41, 47 (2003). A contract is ambiguous if its words can reasonably be understood in different ways. *See Bianchi v. Automobile Club of Michigan*, 437 Mich. 65, 70 (1991). However, the Court does not consider disputed language in isolation. *See Wilkie*, 469 Mich. at 50. Even if the words in question are ambiguous when read in isolation, they are unambiguous if there is only one reasonable understanding of them in light of the rest of the contract. *See id.*

**1. The Loan Modification Agreement is not Internally Inconsistent**

Although Plaintiff's response brief is frequently unclear, Plaintiff appears to argue that the Loan Modification Agreement is internally inconsistent and can reasonably be understood to say that Defendant must apply Plaintiff's payments during the remainder of the interest-only period to pay both the principal balance on the First Mortgage as well as the accrued interest. (Dkt. 24, pp. 20-21.) In support of his arguments, Plaintiff points to language found in four places: (1) the first page of the Loan Modification Agreement;(2) certain portions of the Loan

11

Modification Agreement letter; (3) language in the First Note; and (4) sections of the Truth in Lending Disclosure Statement (TILDS), which was part of the First Mortgage. (*Id.* at pp. 7-8, 20-21.)  Plaintiff's interpretation of relevant language in the Loan Modification Agreement is only plausible if the language is read in complete isolation from the surrounding text, however; it becomes untenable when read in the context of the agreement as a whole.

With respect to the first page of the Loan Modification Agreement, Plaintiff quotes the Agreement as stating that "[b]orrower will continue to make monthly payments until principal and interest are paid." (Dkt. 24, p. 21.) In fact, the Agreement states that once the interest only period expires, the borrower "will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full [...]" (Dkt. 19, Ex. 6 at p. 2.) While Plaintiff contends that this statement supports his argument that the Agreement required Plaintiff's monthly payments during the interest-only period to also be applied to reduce the principal balance, this reading takes the statement completely out of context.

The paragraph in which this statement appears describes in detail Plaintiff's obligation to pay the entire "$530,027.49, ('New Principal Balance') plus interest." (Dkt. 19, Ex. 6 at p. 1.) In this paragraph, Plaintiff's payment schedule through September 1, 2016 is broken down into three phases. (*Id.*) Each phase includes beginning and ending dates as well as the applicable interest rate. *(Id.)* In addition, the description of each payment phase repeats, three times, that "[b]orrower

12

promises to pay monthly payments of *interest*" until the interest-only period expires.[5] (*Id.*) (emphasis added). Only then do we find the language identified by Plaintiff, which describes the remaining period of payments, from September 2016 through August 2036, as the period after the conversion date of September 1, 2016, when Plaintiff's payments *will* actually reduce the principal. (*Id.*) Plaintiff's position that this paragraph of the agreement may be interpreted to mean that all payments were to be applied to pay both principal and interest is untenable. Only when taken completely out of context can the language relied upon by Plaintiff support this reading. When read as a whole, the loan modification agreement does not support Plaintiff's position.

Plaintiff also relies on the June 24, 2010 letter, arguing that it is part of the Loan Modification Agreement, although there is nothing in the letter to suggest that, and Plaintiff does not present evidence of its intended incorporation into the agreement. According to Plaintiff, the letter presents terms inconsistent with those of the Loan Modification Agreement and suggests that Plaintiff's initial payments would reduce the principal balance as well as the interest. (*See* Dkt. 24, p. 12.) The letter is a two-page confirmation letter consisting of five sections. (Dkt. 2, p. 70-71.) Plaintiff points to several sections of this letter in support of his argument. First, he argues that "[s]ection C expressly provides that Plaintiff Gogoe shall pay 'Principal and Interest and Escrow'" in clear contradiction of the rest of the agreement. (Dkt. 24, p. 20.) Next, Plaintiff argues somewhat inarticulately that "the June 24, 2010

---

[5] For example, the Agreement states that "[b]orrower promises to pay *monthly payments of interest* to U.S. $2,347.08, beginning on August 1, 2010 until July 1, 2014." (Dkt. 19, Ex. 6 at p. 2.) (emphasis added).

correspondence to the mortgage modifications Section A, 4th Paragraph it requires payments of 'unpaid Balance'" (*Id.* at 21.) Finally, Plaintiff asserts that "the mortgage modification letter purports to increase the principal of the second mortgage(sic)." (*Id.*)

Once again, when taken as a whole, the letter does not support Plaintiff's interpretation. Section C of the letter does include the phrase "Principal and Interest and Escrow" as Plaintiff alleges, but rather a general notice of the total interest-free $6,027.49 secondary principal amount "included in the Loan Agreement." (Dkt. 2, Ex. J at 70.) This phrase is a mere category descriptor that does not imply that Plaintiff will be required to pay any interest on this amount or that his monthly payment would be applied to the principal. All Section C clarifies is that a total of $6,027.49 in "Principal and Interest and Escrow" has been included in the loan agreement. This does not clearly contradict the agreement itself, which explicitly states that this new secondary *principal* amount is interest-free and will become due when the loan matures, or when Plaintiff sells or transfers an interest in the property or defaults on the loan. (Dkt. 19, Ex. 6 at pp. 2-3.)

Moreover, while the fourth paragraph under Section A of the letter does give an address to mail "the payment towards the unpaid balance amount," any such payment is due by July 4, 2010 only "*if* required" and is not, as Plaintiff argues, required per se. (Dkt. 2, Ex. J at p. 69) (emphasis added). The third paragraph, found immediately above the paragraph Plaintiff cites to, states that "the unpaid balance amount" is $0. (*Id.*) Section D of the letter also states that the "payment

14

towards the unpaid balance" is $0. (*Id.* at 70.) The only payment described in the letter is the monthly "interest only payment" of $2,347.08 listed in Section B. (*Id.*) The letter therefore makes clear that there is no "unpaid balance amount" required, but that Plaintiff will pay $2,347.08 in interest each month, consistent with the terms of the agreement.[6]

Finally, the letter does state in Section C that the $6,027.49 in interest-free principal "will be included in [Plaintiff's] second mortgage loan." (*Id.*) Plaintiff argues that this is inconsistent with the loan modification agreement because the agreement purports to modify the First Mortgage and Note and not increase the principal of the Second Mortgage. (Dkt. 24, p. 12.) It is true that the agreement adds the $6,027.49 in new principal to the original principal of the First Mortgage and Note, and does not explicitly mention the Second Mortgage. (*See* Dkt. 19, Ex. 6, at pp. 2-3.) Plaintiff, however, will not be charged any interest on this new secondary principal amount, and will only have to pay it when the loan matures on August 1, 2036, or when sells or transfers an interest in the property or defaults on the loan. (*Id.* at 3.) To the extent that the letter is inconsistent with the agreement in this respect, this inconsistency is immaterial and does not render the agreement unconscionable.

In addition to the language Plaintiff cites in the letter and the agreement, the Court notes that Section B of the letter, titled "Monthly Payment Breakdown,"

---

[6] As the loan modification agreement makes clear, this payment amount was what Plaintiff was required to pay beginning on August 1, 2010 until July 1, 2014. (Dkt. 19, Ex. 6 at p. 2.) At the time the agreement was entered into and the letter drafted, this was Plaintiff's new monthly interest-only payment amount. As the agreement explains, however, that payment amount will increase in stages through September 1, 2016. (*Id.*)

describes Plaintiff's payments as interest only and amounting to $2,347.08 per month. (Dkt. 2, Ex. J at 70.) Furthermore, this Section clarifies that the "principal and interest payment" is $0. (*Id.*) Far from bolstering Plaintiff's interpretation of the letter, Section B renders it even less reasonable. The loan modification agreement clearly details: (1) Plaintiff's new payment obligations during the interest-only period of the loan; and (2) the amount of new interest-free principal added to the original $524,000.00 principal amount and the conditions of repayment. (Dkt. 19, Ex. 6, pp. 2-3.) Nothing in the letter contradicts these terms.

Although Plaintiff does not formally allege that Defendant breached the First Mortgage, he relies on language in the First Note to argue that the First Mortgage as modified by the Loan Modification Agreement requires Defendant to apply some percentage of his payments during the interest-only period to reducing the principal on the First Note. (Dkt. 2, pp. 7-8.) In particular, Plaintiff references language in paragraph 3(A) of the First Note stating that Plaintiff agrees to "make these payments every month until I have paid all of the principal and interest and any other charges described below that I owe under this Note." (Dkt. 19, Ex. 1 at p. 2.) Reading the Note as a whole, however, it is clear that this statement simply describes the borrower's agreement to make *all* the payments on the Note, whether interest, principal, or other charges. It says nothing whatsoever about whether certain payments will be applied to interest only or to the principal and interest both.

16

The following paragraph, paragraph 3(B), makes it absolutely clear that the initial monthly payments will be applied only to the interest. It reads: "Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the 'First P&I Payment Due Date'), my monthly payments will be *only for the interest due* on the unpaid principal of this Note." (emphasis added). Moreover, paragraph 3(C), titled "Monthly Payment Changes," states that the first "P & I" payment due date is not until September 1, 2016. (*Id.*) Plaintiff's argument that any language in the First Note could be reasonably interpreted to mean that Plaintiff's initial payments would be applied to both interest and principal finds no support in the language of the Note itself.

Finally, Plaintiff alleges that there is similar language in Truth in Lending Disclosure Statement for the First Mortgage, or TILDS 1. (Dkt. 24, pp. 7-8.) Plaintiff argues that Defendant "caused uncertainty and ambiguity by purposefully stating in the Adjustable Rate Note and TILDS that borrower will pay Principal and interest by making payments…and then providing a payment schedule which is inconsistent with, and not based on the interest rate listed in the Adjustable Rate Notes." (*Id.*) Plaintiff, however, does not cite to any specific language in the First Mortgage's TILDS in his response brief, and after careful examination of the document, the Court cannot determine what statement Plaintiff is relying upon support his claim. (*See* Dkt. 19, Ex. 3 at 2.) The payment schedule disclosed in the TILDS clearly states that Plaintiff is to make 120 "interest-only" payments between September 1, 2006 and September 1, 2016. (*Id.*) Ultimately, Plaintiff's

17

interpretations of the Loan Modification Agreement as inconsistent, or as requiring Defendant to apply some percentage of Plaintiff's payments to reducing the principal balance during the interest-only period, are unsupported by the Agreement as a whole. The Loan Modification Agreement is not ambiguous and clearly states that Plaintiff's payments will not reduce the principal amount on the First Note until September 1, 2016. Accordingly, Plaintiff cannot rely on the fact that Defendant has not yet applied his payments toward reducing the principal balance of the First Mortgage to establish a claim for breach.

### 2.  Defendant Has Not Breached the Loan Modification Agreement

While a contract clearly exists between Plaintiff and Defendant, Plaintiff has not plead sufficient facts to state a plausible claim that Defendant has breached the Loan Modification Agreement. To recover for breach of contract under Michigan law, a Plaintiff must allege (1) the existence of a contract, (2) the terms of the contract, (3) that the Defendant breached the contract, and (4) that the breach caused Plaintiff injury. *See Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). Plaintiff alleges that Defendant breached the Loan Modification Agreement by (1) failing to apply portions of Plaintiff's payment to the principal amount on the note, adding $6,027.38 to the principal; (2) causing negative amortization; and (3) otherwise increasing the total amount that Plaintiff has to pay on the First Mortgage. (Dkt. 2.) None of these claims are sufficient to avoid dismissal.

18

Plaintiff alleges that Defendant has not applied any of his payments to the principal balance on the First Note. (Dkt. 2, p. 2.) However, neither the First Mortgage nor the Loan Modification Agreement obligates Defendant to apply Plaintiff's payments to the principal balance until September 1, 2016. (Dkt. 19, Ex. 1 at p. 2, Ex. 6 at pp. 2-3.) The Mortgage Agreements before the Court have been honored, and there is no support for the inference that Defendant has breached the Loan Modification Agreement by failing to apply some of Plaintiff's monthly payment to the principal. Plaintiff cannot point to any part of these contracts which require Defendant to so apply the payments until September 2016.

In addition, Plaintiff's claim that Defendant breached the Loan Modification Agreement by creating "negative amortization" and increasing the total costs that Plaintiff had to pay must also be dismissed. Negative amortization occurs when a borrower's monthly payment is insufficient to pay off the interest accrued over that month and the remaining accrued interest is added to the interest bearing loan balance.[7] *See* Peter Moles and Nicolas Terry, "Negative Amortization" in *The Handbook of International Financial Terms* (online ed. 2005), available at http://http://www.oxfordreference.com. Rather than create negative amortization as Plaintiff alleges, the Loan Modification Agreement reduces the amount that Plaintiff has to pay per month until August 1, 2015 at which point the loan

---

[7] For example, if a borrower borrows $100,000 at an interest rate of 1% per month, but only makes payments of $500 per month, negative amortization will occur. After the first month, $1000 of interest will have accrued. Although $500 in accrued interest is paid off by the first payment, the other $500 (from the first month of accrued interest, which was not paid) is added to $100,000, increasing the total amount due. The next month, the borrower will be charged 1% interest on $100,500 rather than $100,000.

19

continues as outlined in the First Mortgage. (Dkt. 19, Ex. 6 at 2.) A reduction in payments could cause negative amortization if there is not a corresponding reduction in the interest rate, but in this case the interest rates were reduced. (*Id.*) The $6,027.49 added to the principal balance in the Loan Modification Agreement cannot create negative amortization either as Plaintiff is not charged any interest on it per the terms of the agreement. (*Id.*)

Moreover, Plaintiff has not alleged any facts suggesting that Plaintiff will ultimately have to pay more under the Loan Modification Agreement. The Loan Modification Agreement reduces Plaintiff's payments from $3,165.83 per month to $2,347.08 per month for 48 months and to $2,783.75 for 12 months, resulting in a net savings to Plaintiff of $43,884.96. (*Id.*) The only other effect that the Loan Modification Agreement has is to require Plaintiff to pay $6,027.49 by the end of the loan. (*Id.*) Ultimately, the Loan Modification Agreement reduces the total amount that Plaintiff has to pay by $37,857.47. (*See id.*)

Considering the terms of the Loan Modification Agreement, and taking into account Plaintiff's claims, there is no plausible allegation that Defendant has breached the Loan Modification Agreement. There are no facts alleged that suggest that negative amortization has occurred or that Plaintiff is being forced to pay more than he had to previously. Those facts that Plaintiff does allege, when examined in the context of the agreement, mortgages, and notes, actually support the position that Defendant is in full compliance with the Loan Modification Agreement. Therefore, this claim will be dismissed.

## C. Count II: Breach of the Second Mortgage Agreement

Plaintiff alleges that Defendant has breached the Second Mortgage by failing to disclose clearly that there were fees for paying off the loan early and that there was a huge balloon payment at the end of the loan. (Dkt. 2, ¶¶ 58-66.) However, these terms were clearly disclosed on the Truth in Lending Disclosure Statement for the Second Mortgage ("TILDS 2"). (Dkt 2, p. 43.) TILDS 2 indicates that if Plaintiff pays off the loan early, he "may have to pay a penalty" and lists one large balloon payment of $103,216.34 due on August 4, 2021 in addition to 179 monthly payments of $999.40 beginning on September 4, 2006. (*Id.*) The Second Note is consistent with these terms, indicating that Plaintiff "agree[s] to pay a prepayment fee of $500.00…if [borrower] prepay[s] this note in full at any time within the first (3) years after the date of this note" and that Plaintiff agrees to "pay a final balloon payment equal to the unpaid Principal plus all remaining interest." (Dkt. 19, Ex. 4 at pp. 3-4.) Because Plaintiff has not alleged any facts that suggest that Defendant has breached the Second Mortgage, this claim will also be dismissed.

## D. Count III: Fraudulent Misrepresentation Claim

Finally, Plaintiff alleges that Defendant is liable for fraudulent misrepresentation.[8] To plead a claim of fraudulent misrepresentation in Michigan,

---

[8] Plaintiff also alleges that Defendant is liable for innocent or silent misrepresentation. (Dkt. 2, p. 11.) In Michigan, a claim for innocent misrepresentation is shown where a party detrimentally relies on a false representation in such a manner that the injury inures to the benefit of the party making the misrepresentation. *Roberts v. Saffell*, 280 Mich.App. 397, 404, 760 N.W.2d 715 (2008). It is unnecessary to prove that the party making the representation had knowledge that it was false. *Id.* There must be privity of contract between the party making the representation and the party claiming to have detrimentally relied on it. *Id.* Innocent misrepresentation is different from fraudulent misrepresentation in that in a common law fraud action, Plaintiff must establish that the defendant knowingly or recklessly misrepresented a material fact with the intent that the other

Plaintiff must plead (1) that Defendant made a material representation, (2) that it was false, (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) that he made it with the intention that it should be acted upon by Plaintiff, (5) that Plaintiff acted in reliance upon it, and (6) that he thereby suffered injury. *See U.S. Fid. & Guar. Co.v. Black*, 412 Mich. 99, 313 N.W.2d 77, 82 (1981). Moreover, Federal Rule of Civil Procedure 9(b) requires Plaintiffs to plead "with particularity the circumstances constituting fraud." To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff must "specify the statement they contend is fraudulent, identify the speaker, time, and location of the statement, and explain why the statement is indeed untrue or a misrepresentation." *Rautu v. U.S. Bank*, 557 Fed. Appx. 411, 414 (6th Cir. 2014).

In his Complaint, Plaintiff simply asserts that Defendant "made material false representations" concerning the amortization schedule and principal amount that Defendant "knew were false or made such representations recklessly, without knowledge of their truth and as a positive assertion," with the intention that Plaintiff would rely on them. (Dkt. 2, ¶¶ 69-76.) Plaintiff, however, does not allege that whether those statements were oral or written, that a particular person made

---

party rely on it. *Id.* As to silent fraud, a Plaintiff must prove Defendant knew of a material fact but concealed or suppressed the truth through false or misleading statements or actions with the intent to deceive. *Id.* at 405, 760 N.W.2d 715. Plaintiff does not allege any facts that would support either of these claims. (*See* Dkt. 2.) Because the Sixth Circuit has held that fraud claims, including innocent misrepresentation and silent fraud claims under Michigan law, must meet the particularity requirements under Rule 9(b), these claims fail for the same reason as Plaintiff's claim for fraudulent misrepresentation. *Smith v. Bank of America, Corp.*, 2012 WL 2301645 (6th Cir. Jun.8, 2012).

them, that they were made at any particular time or place, nor does he identify how they were false.

In his response brief to this motion, Plaintiff points to the June 24, 2010 letter as a fraudulent misrepresentation made by Defendant, perhaps suggesting that the entire letter is a particular fraudulent statement. (Dkt. 24, pp. 15-16.) Plaintiff fails to quote any particular language in the letter that he considers fraudulent, or explain why such language is fraudulent. Instead, Plaintiff repeats his assertion that the letter "indicates that principal will be paid" and that Defendant "added $6,027.49 to the principal of the first mortgage loan," creating negative amortization. (*Id.* at 16.)  As the Court explained above, the letter clearly indicates that Plaintiff's payments will be applied to the principal beginning in September 2016 and the additional principal cannot create negative amortization because interest will not be charged on it. Plaintiff fails to allege that Defendant made this representation knowing that it was false or that Plaintiff suffered any injury from any misrepresentation in the letter.

In sum, the terms of Plaintiff's mortgages are clearly onerous for the borrower and arguably unfair. The Court, however, is not authorized to re-write contracts in order to rescue one party or another from a bad deal. The Court must analyze the claims and determine whether they meet the applicable legal standards. Here, Plaintiff has failed to plead his fraudulent misrepresentation claim in accordance with Michigan Law and Rule 9(b). Consequently, this claim must be dismissed. As to both of Plaintiff's breach of contract claims, these will be

23

dismissed because Plaintiff has not alleged facts sufficient to state a plausible claim that Defendant breached either the Loan Modification Agreement or the Second Mortgage.

## III. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (Dkt. 19.) is **GRANTED** with prejudice with respect to all of Plaintiff's claims.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  September 21, 2015

## Certificate of Service

I hereby certify that this Order was electronically submitted on September 21, 2015, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager

24